2016 IL App (1st) 152446

SIXTH DIVISION
Opinion filed: August 5, 2016

No. 1-15-2446

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BRAD A. WEISS, D.D.S., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No.   14 CH 9511 |
| | ) | |
| PAUL FISCHL, D.D.S. and FISCHL & WEISS | ) | |
| DENTAL ASSOCIATES, P.C., | ) | |
| | ) | |
| Defendants-Appellants. | ) | Consolidated with: |

| | | |
|---|---|---|
| PAUL FISCHL, D.D.S. and FISCHL & WEISS | ) | |
| DENTAL ASSOCIATES, P.C., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 14 CH 10580 |
| | ) | |
| BRAD A. WEISS, D.D.S., | ) | Honorable |
| | ) | Kathleen M. Pantle, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1    Paul Fischl, D.D.S. and Fischl & Weiss Dental Associates P.C. (FWDA) appeal from an order of the circuit court confirming an arbitration award requiring them to, *inter alia*, pay Brad A. Weiss, D.D.S. the sum of $410,119 for his shares of stock in FWDA and denying their application to vacate the arbitration award and from an order denying their motion for reconsideration. For the reasons which follow, we affirm.

¶ 2    The facts relating to the relationship between the parties is not contested. Fischl and Weiss decided to combine their respective dental practices and entered into a Stock Acquisition Agreement (SAA) dated March 1, 2006, which provides that Weiss would purchase a 50% interest in Fischl's existing dental practice and the name of the entity would be changed to Fischl & Weiss Dental Associates P.C. Incorporated into the SSA were, in addition to other agreements, an employment agreement between Weiss and FWDA (Weiss Employment Agreement) and a Stock Purchase Agreement; both of which appear to have been executed on March 31, 2006. In addition, section 6.3 of the SSA provides that all disagreements arising out of the agreement shall be resolved by arbitration with the American Arbitration Association (AAA).

¶ 3    In relevant part, the Weiss Employment Agreement provides that, upon the termination of Weiss's employment with FWDA, and for a period of three years thereafter, he was bound to the terms of a restrictive covenant appearing in section 12 of that agreement. However, section 4(c) of the Weiss Employment Agreement provides that, in the event that Weiss's employment is terminated by FWDA for cause, FWDA waived its rights under the restrictive covenant contained in section 12. Section 10(b) of the Weiss Employment Agreement provides that, if Weiss's employment is terminated "for any reason," FWDA is required to pay him severance pay

in an amount determined pursuant to an attached exhibit. The Weiss Employment Agreement also contains an arbitration clause similar in wording to the one contained in the SSA.

¶ 4    Section 3(a) of the Stock Purchase Agreement provides that, if Weiss terminated his employment with FWDA, for any reason, within 84 months after the date of the agreement, Fischl "and/or" FWDA had an option to purchase Weiss's shares of stock in FDWA at a price set forth in an exhibit to the agreement that contains specified purchase prices for each of the 84 months following the date of the agreement.

¶ 5    From April 2006 through October 31, 2012, Weiss and Fischl practiced dentistry as employees of FWDA. On October 31, 2012, due to irreconcilable differences that had arisen, Weiss's employment by FWDA terminated. Thereafter, Fischl and Weiss engaged dental-practice consultants to assist in the dissolution of the practice and commissioned an audit of FWDA, but each continued to see patients at FWDA's offices.

¶ 6    On November 28, 2012, Fischl and Weiss executed an FWDA corporate resolution which allowed Weiss to "investigate and negotiate to join, acquire or establish a dental practice that would be in violation of [section 12 of his employment agreement]." The resolution also provided that, "upon the execution of the definitive practice separation documents by Weiss and the Corporation, the Corporation shall fully and forever release Weiss" from the terms of the restrictive covenant contained in section 12 of his employment agreement, including the prohibition against the solicitation of patients for whom Weiss was the primary dentist. However, the record fails to reflect that definitive practice separation documents were ever executed by the parties.

¶ 7    On December 10, 2012, Fischl's attorney sent a proposed Stock Redemption Agreement to Weiss which provided for the surrender of his shares in FWDA and their purchase by FDWA.

The proposed agreement stated that Weiss desired to sell his shares and FWDA desired to purchase them, but the agreement did not contain a purchase price. The agreement was never executed.

¶ 8    By December 15, 2012, Fischl and Weiss agreed to separate the FWDA patients into three groups: Fischl's patients who he or his wife, Dr. Marie Fischl, D.D.S., would continue to treat; Weiss's patients who he would continue to treat; and FWDA patients who would be asked to elect the dentist by whom they wished be treated. Weiss and Fischl also agreed that each of them could contact the individuals falling into the FWDA patient category.

¶ 9    On December 31, 2012, Weiss and Fischl signed the first of several Temporary Work Agreements which allowed them to operate their separate practices at FWDA's offices and provided for cost sharing, personnel assignment, and hours of operation.

¶ 10    On June 27, 2013, Weiss purchased the practice of a retiring dentist whose office was in the same building as FWDA. On July 1, 2013, Weiss opened his new dental practice as Brad Weiss, D.D.S., Ltd. On that same day, Weiss filed a demand for arbitration with the AAA. And on July 2, 2013, he tendered his resignation as an officer and director of FWDA, effective July 1, 2013.

¶ 11    In his demand for arbitration, Weiss sought, *inter alia*, declarations that: his employment with FWDA was terminated for cause; the restrictive covenant set forth in section 12 of his employment agreement is unenforceable; Fischl or FWDA is required to purchase his shares of stock for $410,199; and he is entitled to severance pay. Fischl and FWDA filed an answer to the demand for arbitration, denying Weiss's right to the relief sought. In addition, they filed a counterclaim with the AAA, requesting declarations that neither was required to purchase Weiss's shares in FWDA, and that Weiss is liable for overpayment of compensation and 50% of

the liabilities of FWDA unless and until his shares of stock are transferred. In addition, Fischl and FWDA sought injunctive relief predicated upon Weiss's alleged breach of the restrictive covenant contained in section 12 of his employment agreement and his disclosure of confidential information prohibited by section 11. Weiss answered the counterclaim denying Fischl and FWDA's right to the relief sought along with his affirmative defenses. In addition, the parties each filed prehearing briefs.

¶ 12 The arbitration hearing was conducted before an AAA arbitrator. No transcript of those proceedings is contained within the record filed in this case. Following the arbitration hearing, the parties submitted posthearing briefs. In their posthearing brief, Fischl and FWDA requested that Weiss be ordered to surrender his stock certificate.

¶ 13 Following the correction of a typographical error, the arbitrator issued an amended award on April 15, 2014, finding that Fischl and FWDA terminated Weiss's employment on October 31, 2012, for cause within the meaning of section 4(c) of the Weiss Employment Agreement and, as a consequence, waived any rights under the restrictive covenant contained in section 12 of that agreement. The arbitrator held that, because Weiss's employment was terminated, he is entitled to $103,825.86 in severance pay as provided in his employment agreement. On the issue of Weiss's right to payment for his shares in FDWA, the arbitrator found that, although Fischl was not obligated to purchase Weiss's shares, he demanded return of the shares. The arbitrator also found that the transfer of Weiss's shares to Fischl "and/or" FDWA was mutually intended. The arbitrator fixed the required purchase price as $410,119. In addition, the arbitrator found that Weiss made a binding admission that he was indebted to FDWA in the sum of $144,759.21. Based upon his findings, the arbitrator awarded Weiss the net sum of $369,265.65, payable by Fischl and FWDA within 30 days of the award. The

arbitrator computed the net award by subtracting the $103,825.86 in severance pay that Weiss is owed from the $144,759.21 that he admitted owing to FWDA and then subtracting the remainder of $40,933.35 from the stock purchase price of $410,119. Although the net award was fixed at $369,265.65, applying the formula used by the arbitrator yields a figure which is $80 less. However, neither party has questioned the accuracy of the arbitrator's mathematical computation. In addition to the net monetary award, the arbitrator ordered: Weiss to deliver his stock certificate and an assignment to either Fischl or FWDA within 30 days; FWDA to deliver to Weiss, within 60 days after receiving Weiss's stock certificate and an executed assignment thereof, proof that he had been released by all creditors from the contractual liability of FWDA or, in the alternative, that Fischl and FWDA indemnify Weiss from all contractual liability of FWDA; and that Fischl and FWDA cooperate with Weiss in the transfer of records and other specified material to Weiss or his staff, the expense of which was to be borne by Weiss.

¶ 14  On June 5, 2014, Weiss filed an application to confirm the arbitration award in the circuit court, alleging that he had tendered his stock certificate to Fischl and FWDA as required by the award, but they refused to pay the net monetary award of $369,265.65. On June 24, 2014, Fischl and FWDA filed their application to vacate the award. Thereafter, the matters were consolidated. Following receipt of the parties' briefs and a hearing on the consolidated applications, the circuit court entered a written memorandum and order on February 20, 2015, granting Weiss's application to confirm the arbitration award and denying the application of Fischl and FWDA to vacate that award. Thereafter, Fischl and FWDA filed their "Motion to Reconsider, Modify or Vacate" the court's February 20, 2015, order. On July 30, 2015, the circuit court denied the motion, and this appeal followed. In addition to the absence of any transcript of the proceedings before the arbitrator, the record before us does not contain a

transcript of the proceedings before the circuit court on either February 20, 2015, or July 30, 2015, or a bystander's report of the proceedings on either date.

¶ 15    For their only assignment of error, Fischl and FWDA assert that the circuit court erred in confirming the arbitration award, arguing that the arbitrator exceeded his authority by requiring them to purchase Weiss's shares in FWDA at a price of $410,119.  They request that we reverse the circuit court's order confirming the award in its entirety and "vacate that award, in part, to the extent that it required *** [them] to purchase Weiss' shares."  In support of their argument, Fischl and FWDA contend that the arbitrator:  ignored the plain language of the parties' Stock Purchase Agreement; reformed the Stock Purchase Agreement to create an obligation on their part to purchase Weiss's shares upon the termination of his employment; and fashioned a remedy contrary to the termination provision in the Stock Purchase Agreement.

¶ 16    Weiss argues that the arbitrator had the authority to determine whether Fischl exercised the option to purchase his shares in FWDA and to fix the purchase price.  He also argues that Fischl and FWDA forfeited the argument that the arbitrator lacked the authority to resolve the issue by failing to raise it before the arbitrator.

¶ 17    When a party fails to raise the issue of an arbitrator's authority to decide a question in a timely manner during the arbitration proceeding, the issue is deemed forfeited for judicial review.  *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48-50 (2009).  In this case, Weiss's arbitration demand sought, among other relief, a declaration that Fischl or FWDA were required to purchase his shares for $410,199.  Fischl and FDWA answered the demand, disputing Weiss's right to the relief he sought, but there is no evidence in the record before us that they ever objected during the arbitration proceeding to the arbitrator's authority to decide the question of their obligation to purchase Weiss's shares or the price to be paid.  In their reply brief filed

with this court, Fischl and FWDA state that "[t]here is no question that the parties put before the arbitrator the issue of whether Fischl and FWDA exercised the option or were required to purchase Weiss' stock." Having conceded that they, along with Weiss, placed the question of whether they were required to purchase Weiss's stock before the arbitrator and having never questioned the arbitrator's authority to decide the issue, we believe that Fischl and FWDA have forfeited the issue of the arbitrator's authority to decide the question. See *id.*

¶ 18    Forfeiture aside, Fischl and FWDA's argument that the arbitrator exceeded his authority fails on the merits. Although conceding that the parties placed the question of whether they had exercised their option to purchase Weiss's stock before the arbitrator, Fischl and FWDA claim that the arbitrator was required to resolve the issue on the basis of the parties' agreements, and having failed to do so, he exceeded his authority. They argue that the arbitrator ignored the plain language and limits of the Stock Purchase Agreement, reformed that agreement to create a new obligation to purchase Weiss's stock, and fashioned a remedy that was contrary to the termination provision in the Stock Purchase Agreement. We believe that Fischl and FWDA have confused the issue of the arbitrator's authority to decide the issue of their obligation to purchase Weiss's shares with the question of whether he decided it correctly.

¶ 19    The Illinois Uniform Arbitration Act (Act) (710 ILCS 5/1 *et seq.* (West 2014)) is deemed part of a contract that, as in this case, contains an arbitration clause. *Johnson v. Baumgardt*, 216 Ill. App. 3d 550, 560 (1991). Section 12 of the Act sets forth the grounds for vacating an arbitration award. Section 12(a)(3) provides, in relevant part, that a court shall vacate an award where "[t]he arbitrators exceeded their powers." 710 ILCS 5/12(a)(3) (West 2014). Although section 12(a)(3) provides for the vacation of arbitration awards in circumstances where an arbitrator exceeds his authority, a presumption exists that the arbitrator did not exceed his

authority. *International Ass'n of Firefighters, Local No. 37 v. City of Springfield*, 378 Ill. App. 3d 1078, 1081 (2008). Before vacating an arbitration award, a court must find that "all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair reading of the contract." (Internal quotation marks omitted.) *Rauh v. Rockford Products Corp*., 143 Ill. 2d 377, 392 (1991). "Gross errors of judgment in law or a gross mistake of fact are not grounds for vacating an award unless the mistakes or errors are apparent upon the face of the award." *Id.* at 393.

¶ 20    In this case, the arbitrator specifically found that, under the parties' agreements, Fischl and FWDA were not obligated to purchase Weiss's shares in FWDA. In the same sentence, however, the arbitrator found that Fischl demanded a return of those shares. As the arbitrator noted, "there is no agreement, and there are no facts in this case, that would entitle Dr. Fischl and/or FWDA to receive Dr. Weiss shares without paying for them." We believe that the only event which would have entitled Fischl to demand a return of Weiss's shares would have been the exercise of the option granted in section 3(a) of the Stock Purchase Agreement. Other than the provisions relating to the options to purchase the stock of an FDWA shareholder in the event of retirement, permanent disability, death, inability to practice dentistry or receipt of an offer to purchase the stock from another licensed dentist, none of which are implicated by the circumstances in this case, the only provision in the Stock Purchase Agreement which would require Weiss to surrender his stock would be in the event that either Fischl or FWDA exercised the option to purchase granted to them under section 3(a) of that agreement. As noted earlier, section 3(a) of the Stock Purchase Agreement provides that, if Weiss's employment with FWDA was terminated for any reason within 84 months after the date of the agreement, as the arbitrator found that it was, Fischl "and/or" FWDA had the option to purchase Weiss's stock at a price set

forth in an exhibit to the agreement. As Weiss points out, however, the Stock Purchase Agreement is silent on how the option was to be exercised. There is no requirement that the option be exercised in writing or by any specified means or conduct. Whether Fischl's demand for the return of Weiss's shares was in furtherance of an exercise of the option was an issue for the arbitrator to decide. By fixing the price that Fischl "and/or" FWDA must pay to Weiss for his shares at $410,119, the exact amount to be paid in the event that they exercised their option in December of 2012 as set forth in the exhibit attached to the Stock Purchase Agreement, it is reasonable to conclude that the arbitrator determined that Fischl had exercised the option granted in section 3(a) of the Stock Purchase Agreement. Our conclusion in this regard is further supported by the arbitrator's finding that the transfer of the shares to Fischl or FDWA was "mutually intended" and the fact that the attorney representing Fischl and FDWA sent a proposed Stock Redemption Agreement to Weiss on December 10, 2012, which states that Weiss desired to sell his stock and FWDA desired to purchase it.

¶ 21 After considering the evidence presented at arbitration, the arbitrator determined that Fischl and/or FWDA are required to pay $410,119 for Weiss's shares of FWDA stock. Our review of the arbitrator's award is extremely limited. *American Federation of State, County & Municipal Employees, AFL-CIO v. State of Illinois*, 124 Ill. 2d 246, 254 (1988). We cannot under the guise of judicial review reweigh the arbitrator's interpretation of the facts. *Village of Posen v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 43. Nor may we reverse an arbitration award merely because we may not have decided the issues as did the arbitrator or because we do not believe that the award is supported by the manifest weight of the evidence. *City of Northlake v. Illinois Fraternal Order of Police Labor Council, Lodge 18*, 333 Ill. App. 3d 329, 335 (2002). In this case, we are unable to conclude that the arbitration

award was the result of a gross mistake of fact apparent on the face of the award. Therefore, we: affirm the circuit court's judgment of February 20. 2015, granting Weiss's application to confirm the arbitration award and denying the application of Fischl and FWDA to vacate the award; and, affirm the circuit court's order denying the motion to reconsider, modify or vacate the February 20, 2015 judgment.

¶ 22    Affirmed.